UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

    vs.                REPORT AND RECOMMENDATION

Gerriod Tyrone Simpson,
a/k/a "Gerried Tyrone Simpson,"
and Jessica Lavender Gross,

        Defendants.      Crim. 06-409(01-02)(DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motions of the Defendants Gerriod Tyrone Simpson

("Simpson") and Jessica Lavender Gross ("Gross"), to Suppress Evidence Obtained

by Search and Seizure.[1]  A Hearing on the Defendants' Motions was conducted on

---

[1]Each of the Defendants also filed a Motion to Suppress Statements.  See,
Docket Nos. 21 and 26.  At the Hearing, the Government represented that it would not
offer, at Trial, any statements that were made by Simpson to law enforcement, and
Simpson withdrew his Motion to Suppress at that time.  Evidence was adduced, at the
Hearing, that pertained to Gross' Motion to Suppress and, after the Hearing the
(continued...)

January 8, 2007, at which time, Simpson appeared personally, and by Blair W. Nelson, Esq.; Gross appeared personally, and by Paul A. Kief, Esq.; and the Government appeared by John R. Marti, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendants' Motions to Suppress Evidence Obtained by Search and Seizure be denied.

## II. Factual Background

The Defendants have each been charged with one (1) Count of conspiring to distribute, one (1) Count of possessing with intent to distribute, and one (1) Count of distributing, crack cocaine, in violation of Title 21 U.S.C. §§841(a)(1), (b)(1)(A), (b)(1)(B), and 846.  Additionally, Simpson has been charged with four (4) Counts of distributing crack cocaine, in violation of Title 21 U.S.C. §§841(a)(1), and (b)(1)(C);

---

[1](...continued)
Defendants requested, and the Court granted, until January 17, 2007, for the submission of any further briefing, and the Government was allowed to file any response by January 22, 2007.  See, Docket No. 28.  On January 10, 2007, we granted the Government's Motion to extend the time for a response to January 29, 2007.  See, Docket No. 30.  Thereafter, by letter dated January 17, 2007, counsel for Gross advised that her Motion to Suppress was also being withdrawn. See, Docket No. 33. Therefore, we find that the Defendants' Motions to Suppress Statements should be denied, as moot.  Given the post-Hearing briefing schedule, we took the Motions under advisement on January 29, 2007.  See, Title 18 U.S.C. §3161(h)(1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995), cert. denied, 525 U.S. 1090 (1999).

and one (1) Count of being a felon in possession of a firearm, in violation of Title 18 U.S.C. §§922(g)(1), and 924(a)(2).  The events which gave rise to the conspiracy charge are alleged to have taken place from July 11, 2006, to October 12, 2006, while the events which gave rise to the charges, against both Defendants, of possessing with intent to distribute, and distributing crack cocaine, are alleged to have occurred on or about August 17, 2006, and October 12, 2006, respectively.  The events which gave rise to the charges of distributing crack cocaine, and being a felon in possession, as alleged against Simpson, are said to have taken place from about July 11, 2006, until September 26, 2006.  All of the events are alleged to have occurred in this State and District.

Through their respective Motions, the Defendants have asked us to review the Search Warrant, "on its four (4) corners," in order to determine whether it was supported by probable cause, or subject to any other fatal defects.  No testimony was adduced at the Hearing, and therefore, consistent with the parties' request, we limit our consideration to the "four corners" of the Search Warrant, and its supporting papers.

III.  Discussion

The Defendants' Motion to Suppress Evidence of Search.

       A.    Standard of Review.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  See, Warden v. Hayden, 387 U.S. 294 (1967); United States v. Gettel, --- F.3d ---, 2007 WL 162729 at *3 (8th Cir., January 24, 2007)("A search warrant may only be issued upon a showing of probable cause that evidence or instrumentalities of a crime or contraband will be found in the place to be searched."), citing Walden v. Carmack, 156 F.3d 861, 870 (8th Cir.1998); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. See, Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Davis, 471 F.3d 938, 945 (8th Cir. 2006); United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable

cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, supra at 232; see also, Ornelas v. United States, 517 U.S. 690, 695 (1996).

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodson, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999). In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. See, Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002); United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991). Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant. See, United States v. Durham, 470 F.3d 727, 733 (8th Cir. 2006); United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991). This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth

Amendment's sound preference for searches that are conducted pursuant to Warrants. See, <u>Illinois v. Gates</u>, supra at 236.

Moreover, "[i]t is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." <u>United States v. Gettel</u>, supra at *3; <u>United States v. Kennedy</u>, 427 F.3d 1136, 1141 (8th Cir. 2005); see, <u>United States v. Ozar</u>, 50 F.3d 1440, 1446 (8th Cir. 1995). Therefore, a lapse of time, between the observations of a witness and the issuance of a Search Warrant, like a delay in executing a Search Warrant, "may make probable cause fatally stale." <u>United States v. Maxim</u>, supra at 397 [quotations omitted]. "There is no bright-line test for determining when information is stale," and the passage of time, alone, is "not always the controlling factor," as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," are also relevant to the inquiry. <u>Id.</u>, quoting <u>United States v. Koelling</u>, 992 F.2d 817, 822 (8th Cir. 1993); see, <u>United States v. Chrobak</u>, 289 F.3d 1043, 1046 (8th Cir. 2002); <u>United States v. Rugh</u>, 968 F.2d 750, 754 (8th Cir. 1992); <u>United States v. Kennedy</u>, supra at 1141. As but one example, when the Affidavit alleges an "ongoing continuous criminal enterprise, the passage of time between the receipt of information and the search becomes less critical in assessing probable cause." <u>United States v. Rugh</u>, supra at 754.

Therefore, in our analysis, we must not "simply count[] the number of days between the occurrence of the facts supplied and the issuance of the affidavit," but must consider any passage of time "in the context of a specific case and the nature of the crime under investigation." United States v. Maxim, supra at 397, quoting United States v. Koelling, supra at 822. Furthermore, "'where recent information corroborates otherwise stale information, probable cause may be found.'" United States v. Ozar, supra at 1446, quoting United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991).

B.    Legal Analysis. On October 12, 2006, a Search Warrant was executed at the Defendants' residence, which is located in Bemidji, Minnesota. See, Government Exhibit 1. The Warrant authorized a search for controlled substances, including, but not limited to cocaine; primary containers used to store, preserve, or conceal controlled substances; dispensing equipment and drug paraphernalia; books and records which pertain to narcotics transactions; items which show occupancy of the searched residence and constructive possession of any contraband; firearms and ammunition; computers, computer accessories, and computer storage systems; United States currency, and other items which might constitute proceeds from the sale of controlled substances; and items which depicted drug related activities. The Warrant

also authorized the answering of the telephone while the officers were present at the residence, as well as engaging in conversations with individuals calling.  The officers were further authorized to photograph any items that might be uncovered during the search, and to search any vehicle located at the residence, as well as the persons of Simpson and Gross.

In support of the Search Warrant Application, Robert M. Carlson ("Carlson"), who is a Special Agent with the Beltrami County Sheriff's Department, and a member of the Paul Bunyan Gang and Drug Task Force ("Task Force"), submitted an Affidavit that set forth the reasons which caused him to suspect that evidence of criminal activity would be found at the Defendants' residence.  Carlson averred that, within seventy-two (72) hours of the date of his Affidavit, a confidential reliable informant ("CI -1") had reported observing a quantity of cocaine, in plain view, at the residence of "Ty" and "Jess Gross" in Bemidji, Minnesota.  According to Carlson, CI-1 was familiar with cocaine through prior personal experience.

CI-1 also informed Carlson that "Ty" sold crack cocaine, and occasionally marijuana, from his residence, and was privy to conversations regarding the sale of crack cocaine.  CI-1 added that "Ty" and "Jess Gross" cohabitated at the residence as boyfriend and girlfriend, and described "Ty" as a short Black male, and "Jess Gross"

- 8 -

as a White female with short brown hair.  As related by CI-1, "Ty" was known to have a handgun, although it had not been personally viewed by CI-1. CI-1 described three (3) small surveillance cameras, which were located on the outside of the East, West, and North sides of the residence, as well as corresponding viewing monitors inside the residence, that had been installed for the purpose of identifying law enforcement officers, and thwarting any attempts at apprehension.   Carlson showed CI-1 unlabelled, Minnesota Department of Motor Vehicle ("DMV") photographs of Simpson and Gross, and CI-1 positively identified the Defendants as the individuals known as "Ty" and "Jess Gross."

According to Carlson, CI-1 has been known to law enforcement for several years, and has been responsible for seizures of cocaine, marijuana, and morphine, which have led to the arrest and prosecution of several individuals trafficking in narcotics.  Although the identity of CI-1 has been fully disclosed to Carlson, his or her name was not included in the Affidavit, since CI-1 feared violent repercussions for the assistance he has provided to law enforcement in the investigation.

Within ninety (90) days prior to his Affidavit, Carlson received information, from another confidential reliable informant ("CI-2"), who stated that "Ty" and "Jessica Gross" had been known, by CI-2, for an extended period of time, that those

individuals distributed narcotics from their residence, and maintained a video surveillance system at their residence, for the same reasons as previously related by CI-1.  CI-2 had also observed "Ty" and "Jessica Gross" in possession of narcotics and distribution equipment, in plain view, inside their residence on a number of occasions. Carlson showed CI-2 an unlabelled, Minnesota DMV photograph of Simpson, and CI-2 identified him as the short, Black male known as "Ty."  Also within ninety (90) days prior to Carlson's Affidavit, CI-2 stated that "Ty" was observed in possession of a handgun, and that, within the past 120 days, "Ty" had been observed in possession of an assault-style rifle.

As recounted by Carlson, CI-2 knows what cocaine, marijuana, and the described firearms, are through prior experience.  CI-2 provided the same description of the physical appearance of "Ty," and "Jessica Gross," as CI-1 previously had. Carlson averred that CI-1 and CI-2 are unaware of each other, and have acted independently of one another.  CI-2 had been known to Carlson for approximately four (4) months, was responsible for multiple seizures of cocaine, and had aided law enforcement in the identification of two (2) other cocaine distributors who are unrelated to the Defendants.  The identity of CI-2 was fully disclosed to Carlson, but was not disclosed in Carlson's Affidavit, as CI-2 feared violent repercussions from the

Defendants, and any unknown co-conspirators, for assisting law enforcement in the present investigation.

Carlson attested that he learned, through conversations with the Hennepin County Attorney's office, that Simpson had been convicted of 2nd Degree Assault with a dangerous weapon, in 1996, for inflicting serious bodily harm to a minor child in a domestic assault. Carlson stated that he was told by the CIs that Gross has a young daughter, who is approximately five (5) to eight (8) years old.

Carlson also attested that he had access to law enforcement databases, which confirmed that Simpson and Gross reside at the house in Bemidji, Minnesota, that had been identified by the CIs. Carlson, and other Agents of the Task Force, physically surveilled that residence and confirmed that it matched the description provided by the CIs. Carlson observed high volumes of short-term traffic to the residence, by motor vehicles, bicycles, and pedestrians, which, he attested, was indicative of trafficking in narcotics. Active surveillance of the residence also revealed windows facing the driveway, as well as motion lights on a detached garage on the property, and Carlson averred as to his knowledge that windows and motion lights were often employed by individuals in detecting the movement of persons who were approaching the entryways to residences, including approaches by law enforcement.

On October 12, 2006, a Search Warrant was issued by the District Court of Beltrami County, Minnesota, and the Warrant was executed on the same day, at approximately 10:00 o'clock p.m.  The Receipt associated with the Search Warrant, records that a number of materials were seized from the Defendants' residence.  The objects primarily consisted of substances suspected to be crack cocaine, a glass pipe, United States currency, several cell phones and digital scales, miscellaneous documents and receipts, surveillance cameras, and a loaded handgun, with ammunition.  See, Receipt, <u>Government Exh. 1</u>.

On this showing, we find that there was adequate probable cause to support the issuance of the Search Warrant for the Defendants' residence.  We recognize that much of the information, which is contained in the Affidavit, was supplied by the CIs and, when probable cause for a Search Warrant is based on information provided by an informant, the core question "'is whether the information is reliable.'"  <u>United States v. Warford</u>, 439 F.3d 836, 841 (8th Cir. 2006), quoting <u>United States v. Williams</u>, 10 F.3d 590, 593 (8th Cir. 1993); <u>United States v. Koons</u>, 300 F.3d 985, 993 (8th Cir. 2002); see also, <u>United States v. Reivich</u>, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant

considerations -- but not independent, essential elements -- in finding probable cause.").  As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'"  Id., citing United States v. Anderson, supra at 615.

Consequently, the "core question" is whether the information, which was provided by the informant, was reliable.  See, United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.").  In this respect, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause."  United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998), cert. denied, 525 U.S. 919 (1998).  In turn, an informant is deemed reliable

when his statements are corroborated by independent evidence.  See, United States v.
Carpenter, 341 F.3d 666, 669 (8th Cir. 2003)("[C]orroboration of minor, innocent
details may support finding of probable cause."), citing United States v. Tyler, 238
F.3d 1036, 1039 (8th Cir. 2001); see also, United States v. Koons, supra at 993
("'Information may be sufficiently reliable to support a probable cause finding if the
person providing the information has a track record of supplying reliable information,
or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham,
supra at 401; United States v. Formaro, 152 F.3d 768, 770 (8th Cir.
1998)("[C]orroboration of the confidential informant's information by independent
investigation is an important factor in the calculus of probable cause.").

Here, the CIs were known to law enforcement, see, United States v. Solomon,
432 F.3d 824, 827 (8th Cir. 2005), quoting Florida v. J.L., 529 U.S. 266, 270
(2000)("[A] known informant * * * can be held responsible if her allegations turn out
to be fabricated."), and the information that the CIs  had provided to the officers, in
the past, had resulted in the seizure of controlled substances, including cocaine and
marijuana, and had led to the identification of other cocaine distributors unrelated to
the Defendants.  See, United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir.
2005)(reliability of informant's tip was established where informant had provided

reliable information in the past, and at least some of the tip was corroborated by an independent investigation).   Moreover, the information provided by the CIs was confirmed by independent observations of the Defendants' residence, by Carlson and other officers, and the execution of the Warrant resulted in the confiscation of controlled substances.   See, United States v. Rivera, 410 F.3d 998, 1002 (8th Cir. 2005)(informant's credibility was established where his representations were corroborated by officer surveillance and the recovery of narcotics from the informant following a controlled drug transaction).   Accordingly, we find that Carlson reasonably relied upon the information that was provided by CI-1 and CI-2.

We further find that the information contained in the Search Warrant, concerning the events of the preceding months which culminated in the Defendants' arrest, had not become impermissibly stale by the time the Search Warrant was issued and executed.   Not only did the information provided by CI-2 relate to an ongoing narcotics investigation, but it had been "freshened" with more current information by CI-1, that was provided to Carlson within seventy-two (72) hours of issuance of the Warrant.   See, United States v. Ozar, supra at 1446 ("'[W]here recent information corroborates otherwise stale information, probable cause may be found.'"), quoting United States v. Macklin, supra at 1326; see also, United States v. Morrow, 90 Fed.

- 15 -

Appx. 183, 184 (8th Cir. 2004)("The seven-day delay did not render stale the information on which the Warrant was based."), citing <u>United States v. Gibson</u>, 123 F.3d 1121, 1124-25 (8th Cir. 1997)(four-day delay did not render the Warrant stale where drug activity was ongoing).[2] Nor can it be responsibly argued that a sufficient nexus, between illicit drugs, and the Defendants' residence, had not been shown, given the eyewitness accounts of the CIs, and Carlson's own observations during the surveillance of that residence.

In sum, the Defendants allege no other fatal defects in the Warrant and supporting papers, our independent review has failed to disclose any, and accordingly, we find no basis to sustain a substantive challenge to the Warrant at issue. Therefore, we recommend that the Defendants' Motions to Suppress Evidence from Search and Seizure be denied.

NOW, THEREFORE, It is –

---

[2]Even if the information in the Search Warrant was impermissibly stale, we would be compelled, by the law of this Circuit, to find that the agents' reliance upon the Search Warrant was reasonable, because it "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." <u>United States v. McNeil</u>, 184 F.3d 770, 775 (8th Cir. 1999)(applying <u>Leon</u> good faith exception to arguably stale Search Warrant), citing <u>United States v. Leon</u>, 468 U.S. 897, 922-23 (1984); see also, <u>United States v. Gettel</u>, --- F.3d ---, 2007 WL 162729 at *4 (8th Cir., January 24, 2007).

RECOMMENDED:

1.      That the Motion of the Defendant Jessica Lavender Gross for Suppression of Evidence Obtained from Search and Seizure [Docket No. 21] be denied.

2.      That the Motion of the Defendant Jessica Lavender Gross for Suppression of Statements [Docket No. 21] be denied, as moot.

3.      That the Motion of the Defendant Gerriod Tyrone Simpson for Suppression of Evidence Obtained from Search and Seizure [Docket No. 25] be denied.

4.      That the Motion of the Defendant Gerriod Tyrone Simpson for Suppression of Statements [Docket No. 26] be denied, as moot.


Dated:  January 29, 2007                    s/Raymond L. Erickson
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and

Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 15, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 15, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.